**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELECTRONIC PRIVACY | : | |
| INFORMATION CENTER, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   17-cv-163 (RC) |
| | : | |
| v. | : | Re Document Nos.:   17, 18 |
| | : | |
| OFFICE OF THE DIRECTOR | : | |
| OF NATIONAL INTELLIGENCE, | : | |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM OPINION</u>**

**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

The single document at issue in this Freedom of Information Act ("FOIA") suit is of

interest to a great many people, both in the United States and abroad. That is the reason that the

Electronic Privacy Information Center ("EPIC") seeks it. That is also why the Office of the

Director of National Intelligence ("ODNI") asserts that it must be withheld in full.

The document EPIC seeks is the classified assessment of the U.S. Intelligence

Community ("IC") compiled by ODNI regarding Russia's attempts to influence the 2016 U.S.

presidential election. While this document remains highly classified, ODNI has also published a

declassified version of the assessment, which contains some of the classified report's conclusions

regarding Russian activities and intentions during the election, without any description of the

intelligence sources or methods used to reach those conclusions.

EPIC originally sought the entire classified report, but now appears to concede that there

are portions of the report that properly fall within FOIA Exemptions 1 and 3, exemptions which

ODNI claims justify the withholding of the entire document. It is this blanket withholding that EPIC now challenges, and which the Court now affirms.

For the reasons set forth below, the Court finds that ODNI sufficiently demonstrated that the classified report is subject to withholding under FOIA Exemption 1, which protects classified documents, and FOIA Exemption 3, which protects documents exempted from disclosure by statute. Because the entire report, including information about its length, falls within Exemption 3, there are no reasonably segregable portions of the report that the agency must release. The Court further finds that ODNI's release of a declassified version of the classified report does not entitle EPIC to any portion of the classified report, even a fully redacted version. Because the Court has determined that the entire document was properly withheld under these FOIA exemptions, it declines EPIC's request that it review the document *in camera*.

## II.  FACTUAL BACKGROUND

The subject of this FOIA request is a single document of great public interest, but also with severe national security implications if released to the public. On January 6, 2017, ODNI published an official assessment of the U.S. Intelligence Community—in this case consisting of the Central Intelligence Agency, the Federal Bureau of Investigation, and the National Security Agency—concluding that not only did "Russian efforts to influence the 2016 US presidential election represent the most recent expression of Moscow's longstanding desire to undermine the US-led liberal democratic order," but also that "these activities demonstrated a significant escalation in directness, level of activity, and scope of effort compared to previous operations." Pl.'s Cross-Mot. Summ. J. ("Pl.'s Mot."), Ex. 1 at ii, ECF No. 18-3. This public report, titled *Assessing Russian Activities and Intentions in Recent US Elections*, "[was] a declassified version of a highly classified assessment. [The] document's conclusions [were] identical to the highly

classified assessment ['s], but [the] document [did] not include the full supporting information, including specific intelligence on key elements of the influence campaign." *Id.* at i. The "declassified version was prepared so that the IC could share with the public all information contained in the classified report that could be safely released without jeopardizing intelligence sources, methods, and activities." Def.'s Mot. Summ. J. ("Def's Mot.") at 1, ECF No. 17. Both the classified and declassified versions of the report were compiled by the National Intelligence Officers within the National Intelligence Council ("NIC"), which "is a key ODNI component responsible for leading analysis across the IC to inform immediate and long-term policy deliberations." Decl. Edward Gistaro ("Gistaro Decl.") ¶¶ 9–12, ECF No. 17-1.

Soon after ODNI published the declassified version of the report, EPIC submitted a FOIA request to ODNI seeking a copy of the "unredacted ODNI 2017 report 'Assessing Russian Activities and Intentions in Recent US Elections.'" Def.'s Mot., Ex. 1 at 1, ECF No. 17-1.  Upon receipt of EPIC's FOIA request, "NIC subject matter experts . . . based on their experience with classification standards, their direct and comprehensive knowledge of the sensitive information contained in the classified report, and their understanding of the capabilities of foreign intelligence service operations to uncover classified information by pairing the declassified report with a partially, or even fully, redacted version of the classified report, concluded that release of a redacted version of the classified report would assist foreign intelligence operations with developing and enhancing their understanding of U.S. intelligence sources, methods, and activities." Gistaro Decl. ¶ 26. The NIC subject matter experts "further concluded that release of a redacted report would be of particular assistance to Russian intelligence, which, armed with both the declassified report and a redacted copy of the classified report, would be able to discern the volume of intelligence the U.S. currently possesses with respect to Russian attempts to

influence the 2016 election.  This would reveal the maturity of the U.S.'s intelligence efforts and expose information about the IC's capabilities (including sources and methods) that could reasonably be expected to cause serious or exceptionally grave danger to US national security." *Id.*

On May 2, 2017, ODNI informed EPIC that it had located the document responsive to its FOIA request, but had determined that the request must be denied in full pursuant to FOIA Exemption 1, 5 U.S.C. § 552(b)(1) (information that is "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) [is] in fact properly classified pursuant to such Executive order), and FOIA Exemption 3, 5 U.S.C. § 552(b)(3) (information that is "specifically exempted from disclosure by statute (other than section 552b of this title), if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld"). In particular, ODNI claimed that the document was properly withheld pursuant to Exemption 1 because it contained "information that is currently and properly classified pursuant to Executive Order 13526, Section 1.4 (c), (d)" and that it was properly withheld under Exemption 3 because it contained "information exempt from disclosure by . . . the National Security Act of 1947, as amended, 50 U.S.C. § 3024(i)(1), which protects information pertaining to intelligence methods and sources." Def.'s Mot., Ex. 3 at 1, ECF No. 17-1.

Following its final response to EPIC's FOIA request, which was delivered several months after EPIC had filed suit with this Court, ODNI moved for summary judgment on the ground that it had properly withheld the responsive record pursuant to the applicable FOIA exemptions and that it had demonstrated that it was necessary to withhold the entire responsive

record in full. Def.'s Mot. at 2, 16. In support of its motion, ODNI submitted the declarations of

Edward Gistaro, Deputy Director of National Intelligence for Intelligence Integration, *see*

Gistaro Decl., and Dustin Razsi, Vice Chairman of the National Intelligence Council at ODNI,

*see* Decl. Dustin Razsi ("Razsi Decl."), ECF No. 22-1. EPIC cross-moved for summary

judgment on the ground that ODNI has not sufficiently justified its withholding of the entire

report because the classified report includes unclassified and declassified materials that have

already been released to the public. Pl.'s Mot. at 12, ECF No. 18-1. The parties' cross-motions

for summary judgment are now ripe for decision.

## III.  LEGAL STANDARDS

A court must grant a motion for summary judgment when there is "no genuine issue of

material fact" and the "moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). In order to succeed on the motion, the moving party must demonstrate the absence of a

genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

(1986). A genuine issue of fact is one that "might affect the outcome of the suit under the

governing law." *Id.* at 248. Once the moving party has demonstrated the absence of a dispute of

material fact, the non-moving party may not simply rely on the allegations in its pleadings, and

must establish that there remains a dispute beyond more than the "mere existence of a scintilla of

evidence." *Id.* at 252.

In reviewing a motion for summary judgment under FOIA, the district court conducts a

*de novo* review of the record, *see* 5 U.S.C. § 552(a)(4)(B), and the defendant agency carries the

burden of demonstrating that any responsive records that were not provided were properly

withheld pursuant to one of the nine express statutory exemptions. *Citizens for Responsibility*

*and Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). The

agency may carry its burden by submitting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007).

## IV.  ANALYSIS

Although EPIC's original FOIA request sought a full copy of the classified report, *see* Def.'s Mot., Ex. 1 at 1, ECF No. 17-1, it now appears that EPIC only seeks reasonably segregable portions of the report that do not fall under either Exemption 1 or Exemption 3. *See* Pl.'s Mot. at 2 (EPIC "challenges the ODNI's withholding of the Complete Assessment in full based on Exemptions 1 and 3, contends that the ODNI has 'officially acknowledged' portions of the Complete Assessment, and challenges the ODNI's failure [to] release reasonably segregable portions of the report."). ODNI, for its part, claims that the entirety of the classified report falls under Exemptions 1 and 3, and that even if it did not, there are no reasonably segregable portions of the report that it could safely release to EPIC. Therefore, the Court must determine whether the agency has sufficiently demonstrated that the entire classified report falls within Exemptions 1 and 3, and if not, whether it has sufficiently demonstrated that there exists no segregable portion of the report that can be released without revealing classified or sensitive national security information.[1]

---

[1] The adequacy of ODNI's search for the single record responsive to EPIC's request is not at issue in this case.

The Court first finds that ODNI sufficiently justified its withholding of the document

pursuant to FOIA Exemptions 1 and 3. Because the entire document is exempt, there is no non-

exempt reasonably segregable portion of the report that must be released. Finally, the Court finds

that even though there are portions of the classified report that have already been released to the

public, those lines, when placed within the classified report itself, have not been "officially

acknowledged" in full, and therefore need not be ordered released. Because ODNI has

demonstrated that the entire document was properly withheld, the Court will not exercise its

discretion to review the document *in camera*.

### A.  Exemption 1

ODNI first argues that it properly withheld the report because information within it falls

under FOIA Exemption 1, which applies to records "(A) specifically authorized under criteria

established by an Executive order to be kept secret in the interest of national defense or foreign

policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. §

552(b)(1). The currently applicable Executive Order 13,526 provides, in relevant part, that:

> [i]nformation shall not be considered for classification unless its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security . . . and it pertains to one or more of the following: . . . (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology; (d) foreign relations or foreign activities of the United States, including confidential sources.

Exec. Order No. 13526 § 1.4, 75 Fed. Reg. 707 (Dec. 29, 2009).

ODNI contends that the entire report was properly classified as TOP SECRET in both

procedure and substance, and was therefore properly withheld under Exemption 1. Gistaro Decl.

¶ 16. It further maintains that the entire document remains properly classified as TOP SECRET

to this day. *Id.* ¶ 17. EPIC counters that because there are portions of the classified report that

have now been declassified for publication in a separate report, those portions do not remain

classified within the classified report either. Pl.'s Mot. at 17. Additionally, it argues that the information within the classified report that, on its own, has never been classified was never covered by Exemption 1. *Id.* EPIC contends that this means that the entire report cannot still be properly classified as TOP SECRET and therefore cannot be withheld in full pursuant to Exemption 1. *Id.*

In the context of documents withheld due to their classified status, courts must "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record because the Executive departments responsible for national defense . . . matters have unique insights into what adverse [e]ffects might occur as a result of a particular classified record." *Larson*, 565 F.3d at 864 (internal quotation marks and citations omitted). Overall, the court need only examine whether the agency's classification decision "appears 'logical' or 'plausible.' *Id.* at 862 (citing *Wolf*, 473 F.3d at 374–75); *see also Morley v. CIA*, 508 F.3d 1108, 1124 (D.C Cir. 2007) ("little proof or explanation is required beyond a plausible assertion that information is properly classified.").

ODNI's classification policies provide that "[i]nformation that individually is unclassified or classified at a lower level, may become classified or classified at a higher level when aggregated or compiled in a single document, if the compiled information reveals an additional association or relationship that meets the standards for classification under the Order, and is not otherwise revealed in the individual data items." Office of the Director of National Intelligence, Classification Guide ("Classification Guide"), Section 2.8 (Sept. 30, 2014), *available at* https://www.dni.gov/files/documents/FOIA/DF-2015-00044%20(Doc1).pdf. As such, the unclassified and declassified information in the classified report may maintain a TOP SECRET classification if, when combined with the other information in the report, it "reveals an

additional association or relationship that meets the standards for classification under the Order, and is not otherwise revealed in the individual data items." *Id.*

ODNI argues that it has withheld the report in its entirety for this precise reason. *See* Gistaro Decl. ¶ 20b ("To an *experienced* reader (e.g. a foreign intelligence service analyst), the unclassified information, if left non-redacted, would plainly illustrate factual associations and relationships between the redacted and non-redacted portions of the report.") (emphasis in original). EPIC tries to undercut this argument by pointing out that the unclassified information has already been released, and therefore cannot be the grave threat to national security that ODNI claims it to be. It is true that this information, taken out of context and transplanted into a new document, has been determined to be releasable. But ODNI's release of this information in the declassified report does not undercut its claim that such information, when seen within the context of the redacted report, "reveals an additional association or relationship that meets the standards for classification under the Order." Classification Guide § 2.8. As such, ODNI, through its affidavit, has provided sufficient proof for this Court to find that the information released in the declassified report "logically or plausibly" remains classified within the classified report, and therefore remains covered by Exemption 1. *Wolf*, 473 F.3d at 374–75.

## B. Exemption 3

ODNI also argues that the report was properly withheld because information within it falls within FOIA Exemption 3. Exemption 3 protects information "specifically exempt from disclosure by statute." 5 U.S.C. § 552(b)(3). In order to properly claim that withheld information falls within Exemption 3, the agency "need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." *Larson*, 565 F.3d at 865. Courts have consistently held that Section 102A(i)(1) of the

National Security Act of 1947, which provides that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure," 50 U.S.C. § 3024(i)(1), is one such statutory provision that falls within the requirements of Exemption 3. *Larson*, 565 F.3d at 865. In this case, ODNI claims that it has withheld the classified report in full in order to protect intelligence sources and methods from disclosure through EPIC's FOIA request. Def.'s Mot. at 16–21. EPIC in turn argues that "ODNI's vague, conclusory declaration fails to establish that the entire Assessment would reveal 'intelligence methods and sources.'" Pl.'s Mot. at 17–18.

"Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987) (quoting *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978)). In making this determination, courts afford agency affidavits regarding the contents withheld substantial weight, *Larson*, 565 F.3d at 865, because "it is the responsibility of the [intelligence community], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the . . . intelligence-gathering process," *CIA v. Sims*, 471 U.S. 159, 180 (1985). For that reason, an intelligence agency's protection of sources and methods is a "near-blanket FOIA exemption," *Leopold v. CIA*, 106 F. Supp. 3d 51, 57–58 (D.D.C. 2015) (quoting *Whalen v. U.S. Marine Corps*, 407 F. Supp. 2d 54, 59 n.5 (D.D.C. 2005)), that includes the "power to withhold superficially innocuous information on the ground that it might enable an observer to discover the identity of an intelligence source," *Sims,* 471 U.S. at 178. Courts must understand that "[m]inor details of intelligence information may reveal more information than their apparent insignificance suggests because, much like a piece of [a] jigsaw

puzzle, each detail may aid in piecing together other bits of information even when the individual

piece is not of obvious importance in itself." *Larson*, 565 F.3d at 864 (internal citations and

quotation marks omitted).

ODNI has made clear, and EPIC does not contest, that portions of the classified report are

covered by Exemption 3. The declaration of Edward Gistaro explains that the report contains

information regarding signal intelligence sources, human intelligence sources, intelligence

methods, and intelligence activities. Gistaro Decl. ¶ 15. The parts of the report addressing these

intelligence sources and methods, and what specific intelligence was gleaned from them, are all

clearly covered by Section 102A(i)(1) of the National Security Act of 1947, and those parts are

therefore properly withheld. However, the Court must determine whether there were any portions

of the report that are not covered by Exemption 3, and if so, whether those portions of the report

can be safely released to EPIC and the public.

ODNI has already indirectly conceded that there are portions of the report not covered by

Exemption 3 when released out of context from the rest of the classified report. As explained in

the Gistaro declaration, the declassified report was compiled so that the intelligence community

could "proactively share with the public any and all information contained in the report that

could be safely released without exposing intelligence sources, methods, and activities." Gistaro

Decl. ¶ 18. The agency has already determined that the information in the declassified report,

presented in a different format than in the classified report, and therefore sufficiently

decontextualized, was safe to release.

However, ODNI argues that that determination does not necessarily carry over to the

release of that information while it is placed within the classified report, and insists that "no

portion of the classified report can be released without jeopardizing national security." Def.'s

Mot. at 16. EPIC contests the assertion that the entire report needs to be withheld, arguing that "it is implausible for the ODNI to claim that every portion of the Classified Assessment reveals 'intelligence sources and methods.'" Pl. Mot. at 18. It also argues that the declaration submitted in support of ODNI's motion is too vague to allow this Court to find that ODNI has met its burden of showing that there are no reasonably segregable portions of the document that ODNI could release without revealing such sources and methods. As explained below, however, the Court finds that ODNI has met its burden of showing that the entire report, even portions of the report that have already been released in a separate document, is covered by Exemption 3.

### 1.  Releasing a Partially Redacted Report

ODNI claims that even if it were to release a copy of the report with every portion of the report that has not yet been released redacted, foreign intelligence analysts would be able to glean from a review of that document the comparative strength of U.S. intelligence methods and sources, and would be able to direct countermeasures to protect against those areas where U.S. intelligence methods are strongest. This is because "[t]o an experienced reader, such as a foreign intelligence service analyst, the unclassified information, if left unredacted, would illustrate factual associations and relationships between the redacted and unredacted portions," providing "valuable, contextual clues to foreign intelligence organizations concerning the type, subject matter, and amount of classified intelligence the United States currently possesses or is capable of gathering." Def.'s Mot. at 16. ODNI therefore insists that "[t]he only way to prevent this possibility would be to redact significant amounts, or even all, of the unclassified information to properly conceal and protect U.S. sources, methods, and activities." *Id.* at 16–17. The agency explains that it came to this conclusion after National Intelligence Council subject matter experts re-reviewed the documents in response to EPIC's FOIA request. *See* Gistaro Decl. ¶ 26.

These representations from the agency are sufficient to demonstrate that the portions of the classified report that have already been released in the declassified report were properly withheld in response to EPIC's FOIA request. The agency's concern about Russian intelligence capabilities to discern more information from a partially redacted version of the report than a member of the general public is logical, and the accuracy of those concerns appear plausible. *See Wolf*, 473 F.3d at 374–75 ("Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"). And in these types of FOIA cases, "[t]he agency is not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). Rather, courts should give agencies' assessments, when plausible or logical, substantial weight. *Ctr. for Nat. Sec. Studies v. INS*, No. 87-2068, 1990 WL 236133, at *4 (D.D.C. Dec. 19, 1990). Therefore, the Court finds that ODNI has met its burden of demonstrating that it cannot release a partially redacted version of the report without risking the integrity of U.S. intelligence methods and sources.

## 2.  Releasing a Fully Redacted Report

ODNI has further argued that it would be risky to release "what proportion of the information in the classified report is non-exempt and how it is dispersed throughout the document," Def.'s Reply at 18 n.4, or even "the number of pages contained in the classified report," *id.* at 15. Therefore, the Court must next determine whether the agency has met its burden of demonstrating that it should not be ordered to release an entirely redacted version of the classified report. As explained in the Razsi declaration:

> if the classified report is released in redacted form—including a fully redacted form that, for all practical purposes, only reveals the total number of pages of the classified report— the American public will learn nothing further about Russian interference with the 2016 election. The Russian Government, on the other hand, which is already armed with the

13

declassified report, would be able to better estimate the amount of intelligence the IC has managed to gather on Russian interference with the 2016 election, and from that, the relative strength and maturity of U.S intelligence activities . . . .

Razsi Decl. ¶ 12. After all, any information released that would be useful to EPIC would also likely be useful to Russian intelligence.

Courts in the past have deferred to agency assertions that not only could revelations about the contents of sensitive information be detrimental to U.S. national security interests, but also revelations about the volume of that information. *See e.g.*, *Elec. Privacy Info. Ctr. v. Office Dir. Nat'l Intelligence*, 982 F. Supp. 2d 21, 30 (D.D.C. 2013) ("Information regarding the number of records deleted, similarly, could help counterintelligence personnel deduce the scope of U.S. intelligence operations."); *Aftergood v. CIA*, 355 F. Supp. 2d 557, 562 (D.D.C. 2005) (upholding intelligence agency's withholding of aggregate intelligence budget data on similar grounds); *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 58 n.3 (D.C. Cir. 2003) (agency declaration adequately explained that no portion of a withheld document could be released without threatening the disclosure of intelligence sources and methods, because revealing even the number of names contained in the document would "reveal CIA interest" and "the extent of the U.S. intelligence collection effort directed at Cuba in the 1960s"). Although the amount of protected information foreign intelligence agencies would be able to obtain by reviewing a fully redacted version of the report as opposed to a partially redacted version of the report is far smaller, the agency has still met its burden of demonstrating that it is plausible that even releasing a fully redacted version of the report would pose too great a risk to the collecting agencies' national security operations.[2] The predictions of ODNI staff, who rereviewed the

___

[2] Additionally, it should be noted that even if that risk were small, so too is the amount of useful information EPIC would be able to glean from a fully redacted report. As such, the risk

report in response to EPIC's FOIA request, and "who must of course be familiar with 'the whole picture,' as judges are not, are worthy of great deference given the magnitude of the national security interests and potential risks at stake." *Sims*, 471 U.S. at 178.

## C.  Segregability

FOIA's exemption provision, 5 U.S.C. § 552(b), requires that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt." EPIC argues that portions of the report must be reasonably segregable from the exempted material, and that that material must be released. Pl.'s Mot. at 22 ("The ODNI had conceded that the record contains unclassified information, [but] nevertheless has withheld the document in its entirety.")  But as explained above, ODNI has met its burden of demonstrating that the entire report falls within Exemptions 1 and 3, and that there are no portions of the report that can be safely released, including information about its length, without jeopardizing our national security. *See* Section IV.A, IV.B *supra*. As such, ODNI has also demonstrated that, as every portion of the report is covered by a national security exemption, there are no "reasonably segregable portions" of the report for it to safely release.

## D.  Official Acknowledgment

EPIC has also argued that even if the Court finds that the entire classified report properly falls within Exemptions 1 and 3, the report cannot be withheld in full because portions of it have been "officially acknowledged" through their publication in the declassified report. Pl.'s Mot. at 20–21. "[W]hen information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim." *Fitzgibbon v. CIA*, 702 F.2d

---

would still be greater than any benefit to be derived from the release of a fully redacted report, further countenancing against its release.

1125, 1133 (D.C. Cir. 1983). In order for information to be considered "officially acknowledged," it must "match the information previously disclosed," be "as specific as" it, and it must have been "made public through an official and documented disclosure." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983)). This is because "while the logic of FOIA postulates that an exemption can serve no purpose once information . . . becomes public, we must be confident that the information sought is truly public and that the requester receives no more than what is publicly available before we find a waiver." *Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999) (internal citations and quotation marks omitted). EPIC argues that some of the information contained within the classified report meets these three criteria, and therefore cannot be withheld. Pl.'s Mot. at 20–21.

ODNI only peripherally attacks this argument. Instead of directly contesting the assertion that some of the information withheld meets the three requirements for official acknowledgment under *Fitzgibbon*, the agency argues that it should not be punished for its good deed in releasing the declassified assessment. Def.'s Reply at 15–16. However, ODNI does cite to a case in which the D.C. Circuit performed the *Fitzgibbon* analysis and found that the FOIA plaintiff had not met its burden of showing that the documents the defendant agency had released "duplicate" the documents the plaintiff sought. *See* Def.'s Reply at 15–16 (citing *Assassination Archives & Research Ctr.*, 334 F.3d at 60). ODNI is correct that when a plaintiff claims that the documents or information it seeks have already been officially acknowledged, it bears the burden of showing that the information requested meets the three *Fitzgibbon* factors. In this case, EPIC has not met that burden.

ODNI has already conceded that some of the information in the classified report matches information in the declassified report. *See* Gistaro Decl. ¶ 22 ("The declassified report . . . contained the unclassified content of the classified report including all the conclusions regarding Russian interference with the U.S. 2016 presidential election."); Razsi Decl. ¶ 8 ("the substance of the unclassified verbiage contained within the body of the classified report was included in the declassified report"). Additionally, the declassified report is an "official and documented disclosure" of information contained in the classified report. *See Afshar*, 702 F.2d at 1133.

However, EPIC has not met its burden of demonstrating that the information already released in the declassified report completely "matches" and is "as specific as" the information it seeks through a partially or fully redacted copy of the classified report. *See Fitzgibbon*, 911 F.2d at 765 (explaining that for information to be "officially acknowledged," it must be "as specific as the information previously released" and it must "match the information previously disclosed"). EPIC has not shown that the agency has officially acknowledged such information as the length of the report, where the conclusions that have already been released are placed within the report, or what proportion of the report remains classified as compared to the portions that are unclassified or now declassified. What ODNI seeks to protect are precisely these sorts of associations and relationships between already released conclusions and the text and format of the classified report, a category of information which ODNI did not release when it released the declassified report.

Notably, EPIC has not articulated what it would gain by receiving what it argues is information identical to what has already been released. And any insight it could conceivably gain from this type of disclosure is exactly the type of information ODNI believes cannot be disclosed for national security reasons. Because EPIC has not shown that the agency has already

released all of the information that would be revealed through the release of a redacted version of the classified report, it cannot prevail on its argument that it is entitled, by a waiver through official acknowledgment, to a redacted copy of the classified report.

### E.  EPIC's Request for *In Camera* Review

EPIC has requested that "the Court . . . undertake *in camera* inspection to determine whether in fact Defendant's declaration supports complete withholding without further processing." Pl.s Mot. at 1. It further explains that it "believes [*in*] *camera* review is necessary to resolve the agency's segregability claims in this case." Pl.'s Reply at 8.

FOIA grants courts the power to "examine the contents of [] agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section." 5. U.S.C. § 552(a)(4)(B). While courts hold this power, the statute "by no means compels the exercise of that option." *Juarez v. Dep't of Justice*, 518 F.3d 54, 59–60 (D.C. Cir. 2008). Indeed, courts should only exercise this option if the agency's declarations do not "provide specific information sufficient to place the documents within the exemption category, if this information is [] contradicted in the record, and if there is [] evidence in the record of agency bad faith." *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979). "When the agency meets its burden by means of affidavits, *in camera* review is neither necessary nor appropriate," *Id*. "Once satisfied that proper procedures have been followed and that the information logically falls into the exemption claimed, the courts need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith." *Gardels v. CIA*, 689 F.2d 1100, 1104 (D.C. Cir. 1982) (internal citations and quotations marks omitted). In this case, the Court finds that the agency has already met its burden, and therefore, that *in camera* inspection is not warranted.

ODNI has already explained how releasing information as seemingly mundane as the placement of its unclassified and declassified conclusions within the classified report, or the length of the report, could compromise national security by allowing foreign intelligence agents to more easily estimate which conclusions came from which sources, as well as the volume the U.S. intelligence has gathered in this area. Even if the Court were to inspect the document *in camera*, the Court would be no better situated to evaluate the agency's prediction that the release of such information would be harmful to national security. And the agency, which has already explained how the release of a partially or fully redacted copy of the report would harm national security, and which has already proactively released the conclusions from the classified report in order to inform the American public about Russian interference in our elections, has shown no indication of bad faith in its attempt to protect the classified report. Therefore, the Court denies EPIC's request that it review the classified report *in camera*.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 17, is **GRANTED** and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 18, is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: December 18, 2017                                   RUDOLPH CONTRERAS
                                                           United States District Judge